No. 23-6359

---

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

**ROBERT FRAZIER; ANIBAL HERNANDEZ; D.P., a minor, by and through his next friend and guardian, K.P.; CHRISTOPHER BUTLER; MIRAMBA WILLIAMS, individually and on behalf of a class of similarly situated persons**

> Plaintiffs-Appellants

**and**

**DONNELL DAVIS; LESLIE SHARP; ELMER LAGUAN-SALINAS; ADRIENNE WORTHINGTON, individually and on behalf of a class of similarly situated persons**

> Plaintiffs

> v.

**PRINCE GEORGE'S COUNTY, MARYLAND**

> Defendant-Appellee

**and**

**CORENNE LABBÉ, in her official capacity as Director of the Prince George's County Department of Corrections; JEFFREY LOGAN, in his official capacity as Division Chief of the Prince George's County Population Management Division; KENNETH GRAY, in his official capacity as Section Chief of the Prince George's County Community Supervision Section; TANYA LAW, in her official capacity as Unit Chief of the Prince George's County Monitoring Services Unit; LAKEECIA ALLEN; BRYON BEREANO; JOHN BIELEC; SCOTT CARRINGTON; ADA CLARKEDWARDS; STACEY COBB SMITH; BRIAN DENTON;**

**ROBERT HEFFRON, JR.; DONNAKA LEWIS; OFFICER GREGORY POWELL; CATHY SERRETTE, in their personal capacities and official capacities as District and Circuit Court Judges for the District and Circuit Courts of Maryland for Prince George's County**

　　　**Defendants**

_____

**Appeal from the United States District Court
For the District of Maryland
Greenbelt Division**

_____

**REPLY BRIEF OF APPELLANTS**

_____

Ellora Thadaney Israni*
Jeremy D. Cutting
Ryan C. Downer
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW
Suite 800
Washington, D.C. 20009
Phone: (202) 894-6132

Seth Wayne*
Elizabeth R. Cruikshank
Mary B. McCord*
INSTITUTE FOR CONSTITUTIONAL
　ADVOCACY AND PROTECTION
GEORGETOWN LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 662-9042

Matthew Martens*
Edward Williams*
Donna Farag
Thomas Bredar*
Ayana Williams
Sonika Data
WILMER CUTLER PICKERING
　HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
Phone: (202) 663-6487

*Counsel for Plaintiffs-Appellants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ................................................................................ 1

ARGUMENT ........................................................................................ 2

    I.    The County Does Not Dispute that the District Court Failed to Consider the Evidence or Make the Required Findings. ......................... 2

    II.    The *Winter* Factors Favor a Preliminary Injunction. ................................ 3

        A.  The County Accepts the Material Facts. ...................................... 4

        B.  Plaintiffs Are Likely to Succeed on the Merits. ...................................... 7

        C.  The Remaining *Winter* Factors Favor Plaintiffs. ............................... 12

    III.    The County's Procedural Arguments Are Unavailing. ........................... 13

        A.  This Court Has Jurisdiction. .................................................... 14

        B.  The County Can Be Enjoined. ................................................. 18

        C.  The Court Can Instruct the District Court to Enter an Injunction. 23

CONCLUSION ................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Bratcher v. Clarke*, 725 F. App'x 20 (4th Cir. 2018) ............................................................... 2

*Buffin v. City & Cty. of San Francisco*, No. 15-CV-4959,
2016 WL 6025486 (N.D. Cal. Oct. 14, 2016) ............................................................... 21

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) .................................................................. 22

*Crussiah v. Inova Health Sys.*, 688 F. App'x 218 (4th Cir. 2017) ............................................ 2

*Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ............................................................. 17

*Daves v. Dallas Cty., Texas*, 22 F.4th 522 (5th Cir. 2022) ..................................................... 20

*Daves v. Dallas Cty., Texas*, 984 F.3d 381 (5th Cir. 2020) .................................................... 20

*Edwards v. Cofield*, 265 F. Supp. 3d 1344 (M.D. Ala. 2017) ................................................ 20

*Eisenberg ex rel. Eisenberg v. Montgomery Cty. Pub. Schs.*, 197 F.3d 123 (4th Cir. 1999) ..... 24

*Ex parte Young*, 209 U.S. 123 (1908) ..................................................................................... 19

*Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66 (2013) ................................................... 17

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ................................................................................... 17

*GG ex rel. Grimm v. Gloucester County School Board*, 822 F.3d 709 (4th Cir. 2016) .......... 23

*Green v. Mansour*, 474 U.S. 64 (1985) ................................................................................... 21

*Greenhill v. Clark*, 672 F. App'x 259 (4th Cir. 2016) ............................................................. 3

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ................................................................................ 8

*Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999) ................................................................. 9

*Holland v. Rosen*, 895 F.3d 272 (3d Cir. 2018) ..................................................................... 15

*Jonathan R. by Dixon v. Just.*, 41 F.4th 316 (4th Cir. 2022) ................................................. 17

*Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017) .................................................................... 14

*League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014) ....... 23, 24

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) .................................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................................. 16

*McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991 (6th Cir. 2019) ............................. 18, 21, 22

*McNeil v. Cmty. Prob. Servs., LLC*, No. 18-CV-00033,
2019 WL 633012 (M.D. Tenn. Feb. 14, 2019) ............................................................. 19

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) .............................................. 16

*ODonnell v. Harris Cty., Texas*, 892 F.3d 147 (5th Cir. 2018) .............................................. 20

*Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959 (D. Ariz. 2011) ...................................... 19

*Pakdel v. City of San Francisco*, 141 S. Ct. 2226 (2021) ....................................................... 12

*Reno v. Flores*, 507 U.S. 292 (1993) ........................................................................................ 7

*Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758 (M.D. Tenn. 2015) .......... 19

*Rullan v. Goden*, 782 F. App'x 285 (4th Cir. 2019) ............................................................. 2, 3

*Schultz v. Alabama*, 42 F.4th 1298 (11th Cir. 2022) ............................................................. 20

*Sosna v. Iowa*, 419 U.S. 393 (1975) ....................................................................................... 17

*Torres v. Collins*, No. 20-CV-00026,
    2020 WL 7706883 (E.D. Tenn. Nov. 30, 2020)............................................10, 13, 19
*United States v. Leathers*, 412 F.2d 169 (D.C. Cir. 1969) ...................................... 11
*United States v. Mantecon-Zayas*, 949 F.2d 548 (1st Cir. 1991)............................ 11
*United States v. Salerno*, 481 U.S. 739 (1987).................................................... 7, 8
*Wheeler v. State*, 864 A.2d 1058 (Md. Ct. Spec. App. 2005) .........................7, 8, 10
*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021)...................................... 19
*Zadvydas v. Davis*, 533 U.S. 678 (2001) .............................................................. 7, 8

## Rules

Fed. R. Civ. P. 52(a)(2)............................................................................................. 2
Md. Code § 11-718..................................................................................................... 9
Md. R. Crim. Causes 4-216.1 ................................................................................. 6, 8

## Treatises

Restatement (Third) of Torts: Phys. & Emot. Harm...................................................... 15

**INTRODUCTION**

Defendant-Appellee Prince George's County's ("the County") response brief does not dispute that the district court failed to conduct any meaningful review of Plaintiffs-Appellants' ("Plaintiffs") motion for a preliminary injunction. This concession means Plaintiffs must prevail on their appeal.

In its argument on the merits, the County relies on a series of mischaracterizations of the undisputed facts, Plaintiffs' claims, and the law. At base, the County admits that its pretrial referral practices operate exactly as Plaintiffs allege: Once a state court issues a pretrial referral to an individual, the County's Department of Corrections applies its own internal process, criteria, and timeline to decide whether, when, and on what conditions that person will be released from jail before trial. Plaintiffs contend that this referral practice violates fundamental constitutional rights established by longstanding controlling law.

Instead of addressing Plaintiffs' arguments and the legal precedent supporting them, the County's response repeatedly mischaracterizes the merits, this Court's jurisdiction, and the available relief. These arguments fail. This Court should, at least, vacate the district court's denial of the preliminary injunction. In light of the uncontested factual record, moreover, it should remand with instructions to enter a preliminary injunction.

## ARGUMENT

**I.    The County Does Not Dispute that the District Court Failed to Consider the Evidence or Make the Required Findings.**

A district court abuses its discretion by denying a preliminary injunction without considering the evidence and providing a reasoned decision, including making findings of fact and conclusions of law. Brief of Plaintiffs-Appellants, Doc. 26 ("Opening Br."), at 25 (citing Fed. R. Civ. P. 52(a)(2)). The County does not disagree with this black letter law. Nor does the County dispute that the district court in this case failed to comply with those rules when it issued a one-paragraph order denying Plaintiffs preliminary relief. *See* Corrected Response Brief of County-Appellee, Doc. 37 ("County Br."). This alone requires vacatur of the district court's order. *Rullan v. Goden*, 782 F. App'x 285, 286 (4th Cir. 2019); *see also Bratcher v. Clarke*, 725 F. App'x 203, 206 (4th Cir. 2018); *Crussiah v. Inova Health Sys.*, 688 F. App'x 218, 218–19 (4th Cir. 2017) (per curiam).

The County attempts to defend the district court's order in a single conclusory sentence, claiming that "[t]he Court was well within its discretion to deny the motion for preliminary injunction as it had abundant evidence and briefing of the issues before it." County Br. at 8. Plaintiffs agree that there was sufficient evidence and argument on the record to allow the district court to rule on Plaintiffs' motion. But having evidence and argument to consider is not enough. The district court must actually consider the evidence and argument and "state the findings and conclusions that support its action," Fed. R. Civ. P. 52(a)(2), permitting appellate review without compelling the reviewing

court to guess at the district court's reasoning, *Greenhill v. Clark*, 672 F. App'x 259, 260 (4th Cir. 2016) (per curiam). Here, although the unchallenged factual record was extensive and the legal issues fully briefed, JA104–536; JA542–638, the district court did not engage with that evidence, address those arguments, or make any findings of fact or conclusions of law, stating only that it was denying preliminary relief "for the reasons stated on the record during the March 2, 2023 telephone conference." JA831. And at that telephonic scheduling conference, the only reasons stated were that the facts are disputed (they aren't), and that the district court generally disagrees with the wisdom of preliminary injunctions. *See* Opening Br. at 22–23. This is not sufficient. This Court has repeatedly reprimanded trial courts for similarly deficient orders. *See, e.g.*, *Rullan*, 782 F. App'x at 286. The district court's order denying the preliminary injunction should, at minimum, be vacated.

## II.     The *Winter* Factors Favor a Preliminary Injunction.

But this Court should go beyond vacatur. At this moment, hundreds of members of the putative plaintiff class are improperly confined to jail cells, stripped of their liberty, prevented from hugging their children, unable to pay rent or bills, and exposed to threats of illness, violence, and death. All this despite a state court judge having implicitly found, in each person's case, that their detention cannot possibly be necessary to meet a compelling state interest by granting the County unfettered authority and discretion to release them. Every additional day of unconstitutional jailing inflicts further irreparable harm.

3

The district court failed to address the evidence or the law, but Plaintiffs' motion is supported by a materially uncontested factual record, Plaintiffs are likely to succeed on the merits, and Plaintiffs and class members continue to suffer irreparable harm that would be exacerbated by further delay. This Court can and should apply the *Winter* factors and remand with instructions to enter a preliminary injunction.[1]

## A. The County Accepts the Material Facts.

The County's response confirms that the parties' sole disagreements are on issues of law. The County agrees with the material facts: namely, that in Prince George's County, the critical decision of whether presumptively innocent persons will be jailed awaiting trial is made not by the courts, but by officials in the County Department of Corrections' Pretrial Division ("the Division"). County Br. at 3–7. The County acknowledges that a "pretrial referral" from a trial court judge is an authorization to release an arrested person, but that the County's unaccountable, non-judicial officials then apply their own process, criteria, and timeline to decide whether, when, and on what conditions persons given these referrals are actually released before trial. As a result, people who are referred to the Division are regularly detained for weeks or months while the Division "processes" their cases, and a significant portion of people referred to the Division are never released before trial. Opening Br. at 13–20.

---

[1] The County devotes a page of its brief to reciting the legal standard for a permanent—rather than preliminary—injunction. County Br. at 10–11. This law is irrelevant. Plaintiffs' motion indisputably seeks only preliminary injunctive relief. JA149–152.

Specifically, the County acknowledges that judges authorize the Division to release persons at its discretion pursuant to the referral process, which is "a program established by the jail." County Br. at 1; *see also id.* at 4 (acknowledging that these referrals may be phrased as an "order" or "option"). A "pretrial referral" is thus "a chance for pretrial release courtesy of the County jail." *Id.* at 3. County officials, not judges, decide whether that chance is real; or, as the County puts it, whether a person already "conditionally authorized" for release, *id.* at 5, is actually "found to be eligible," *id.* at 4; *see also id.* ("[T]he jail may accept the defendant into the jail's pretrial release program if the defendant meets the program requirements."). Those eligibility requirements are established and interpreted by the jail. *Id.* at 3–5. If after applying its criteria the jail decides to release a referred person, the court is not consulted—or even notified. *Id.* at 5. If the Division delays its processing or decides *not* to release the person, they remain in jail indefinitely with no further process offered. Their only avenue for reconsideration is having their lawyer request another bail review hearing. *Id.* These facts are undisputed.[2]

---

[2] Plaintiffs note that the County makes a small handful of statements that conflict with the undisputed evidence in the record. For instance, the County is incorrect that bail reviews typically occur on the next day; they occur, as the County has stated previously, on the next *business* day, meaning someone may have been in custody for three or even four days at that point. *Compare* County Br. at 3 *with* JA547. The County is also mistaken that the state court possesses no information from the Pretrial Division at the time it makes a referral; in fact, the Pretrial Division provides the court with an "Intake Fact Sheet" prior to the bail review. *Compare* County Br. at 6 *with* JA156, JA254. The County is incorrect that the Pretrial Division advises the courts and counsel of its denial

The County observes that pretrial release programs are not unusual. Of course, even if systems like this were ubiquitous, it would not guarantee their constitutionality. But as far as Plaintiffs are aware, no other programs, in Maryland or elsewhere, work like Prince George's County's. In other jurisdictions, such as neighboring Montgomery County, a judge decides at the bail hearing whether a person will be released or detained. JA636–638. While that decision may be informed by information and a recommendation from pretrial services, *id.*; *see also* Md. R. Crim. Causes 4-216.1 (empowering judges alone to make pretrial release decisions and explicitly allowing for the *recommendation* of a pretrial supervision agency), "[i]t is the court's criteria, not [pretrial service's], that determine release." JA638; *see also* JA215 ("[O]ther jurisdictions, [Chief of Pretrial Division Jeffrey Logan] noted, rapidly release people on supervised release as soon as they have been judicially authorized to do so."). The County does not dispute this either.

The parties agree that each plaintiff was subjected to the County's unique process. Each was issued a pretrial referral by a judge, waited in jail for weeks or months for the Division to decide whether or not they would be released, and suffered grave,

_____

decisions; at best, denial notices are delayed and woefully inconsistent. *Compare* County Br. at 5 *with* JA187, JA214, JA403. And the County is wrong that the named Plaintiffs seeking equitable relief were approved only for Level IV supervision; in fact, several were approved for pretrial release at any level. *Compare* County Br. at 5 *with* JA319, JA218. None of these misstatements materially affect the resolution of Plaintiffs' motion, as they do not disrupt the parties' consensus that people issued referrals are regularly detained for weeks or months while the Division "processes" their cases, and that many of those referred are never released while awaiting trial.

irreparable harm while detained. The only open question is a legal one, reviewed *de novo*:

Do these practices likely violate the Constitution?

**B. Plaintiffs Are Likely to Succeed on the Merits.**

### 1. The Constitution Creates a Fundamental Right to Pretrial Liberty, Which Precludes Pretrial Detention Absent a Judicial Finding of Necessity.

Plaintiffs are likely to succeed on the merits of their substantive and procedural

due process claims. Opening Br. at 30–41. The crux of Plaintiffs' claims is this: Because

a person's "interest in liberty" is "fundamental," *United States v. Salerno*, 481 U.S. 739,

750 (1987); *see also, e.g.*, *Wheeler v. State*, 864 A.2d 1058, 1062 (Md. Ct. Spec. App. 2005),

the government may not infringe on that interest "*at all*, no matter what process is

provided, unless the infringement is narrowly tailored to serve a compelling state

interest," *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citing, *inter alia*, *Salerno*, 481 U.S. at

746). Thus, a person cannot be detained while awaiting trial unless no alternatives to

detention—including release on any conditions—will reasonably protect the

community's safety and ensure the person's return to court. *See Salerno*, 481 U.S. at 748–

49.[3] Separately, a person must receive "strong procedural protections" before being

deprived of liberty, *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001), including a "full-

blown adversary hearing" in front of a "neutral decisionmaker," consideration of

---

[3] State and federal courts around the country have reiterated this principle. *See* Opening Br. at 31 (collecting cases).

alternative conditions of release, application of a heightened standard of proof, and recorded "findings of fact" and "statement[s] of reasons for a decision to detain," *Salerno*, 481 U.S. at 750–52; *see also* Md. Rule 4-216.1(b)(1)(B).[4]

Although the County's pretrial system is unlike any other in Maryland, the same due process requirements apply. The County's arguments to the contrary depend on mischaracterizations of Plaintiffs' claims. Plaintiffs do not allege that the County has "violated any court order" by failing to release them, County Br. at 17, but that the County has violated *the Constitution*. Whether or not Plaintiffs are detained pursuant to state court commitment orders has no bearing on whether their detention violates the Constitution. By definition, any commitment order that contains a pretrial referral authorizing release includes a determination that pretrial incarceration is not necessary. Opening Br. at 31; *id.* at 31 n.15. And detention absent a finding of necessity violates the Constitution. Nor do Plaintiffs claim a liberty interest in participating in a pretrial release program, County Br. at 21; they claim a fundamental due process interest in liberty before trial. This interest derives not from a court order or a County program, but the Constitution itself. *Salerno*, 481 U.S. at 750 (1987); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (incarceration implicates the "most elemental of liberty interests") (plurality); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects."); *Wheeler*, 864 A.2d at 1062 ("An

---

[4] Again, courts around the country have repeatedly affirmed that procedural due process requires these protections. *See* Opening Br. at 37 (collecting cases).

individual's 'interest in liberty' is of a 'fundamental nature.'" (quoting *Salerno*, 481 U.S. at 746)).

*Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999), on which the County relies heavily, is inapposite. The plaintiff in *Hawkins* was validly convicted of a crime, incarcerated, released on parole, and then re-incarcerated when the parole board realized his release was contrary to state law. *Id.* at 735–37. The *Hawkins* panel was tasked with considering whether mistakenly releasing Mr. Hawkins on parole had created a new liberty interest by legislative or executive action. Such actions only create liberty interests if they "shock the conscience." *Id.* at 741–47. But here, the right that Plaintiffs and putative class members claim is being violated is not created by any executive action. Rather, it is the longstanding "fundamental" right to bodily liberty created by the Constitution itself. Constitutional violations need not "shock the conscience" to be legally cognizable. Nor do Plaintiffs assert a legislatively created right. The statutory provision cited by the County (at 25–26 (citing Md. Code § 11-718)), simply allows the County to maintain work-release and other programs for people who have already been convicted of a crime. It does not mandate or create the unconstitutional conditions to which Plaintiffs—legally innocent pretrial detainees— have been subjected.

When courts across the country have considered claims regarding the constitutionality of pretrial detention, they consistently apply the heightened scrutiny applicable to "fundamental liberty interest[s]." *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772,

780–81 (9th Cir. 2014); *see also, e.g.*, *Torres v. Collins*, No. 20-CV-00026, 2020 WL 7706883, at *8 (E.D. Tenn. Nov. 30, 2020); *Wheeler*, 864 A.2d at 1065. The framework used in *Hawkins* is nowhere to be seen. Applying the correct standard here makes clear that Plaintiffs are likely to succeed on the merits of their constitutional claim.

### 2. **Salerno** *and Its Progeny Apply to Putative Class Members Who Have Received a Pretrial Referral.*

The County's attempts to situate this case outside the standards established by *Salerno* and its progeny addressing pretrial incarceration fail. *See infra* Section II.B.1; Opening Br. at 30–31. The County concedes that, if a person is "preventively" detained while awaiting trial—*i.e.*, if no conditions of release or bail are set—the substantive due process standard articulated above may apply. County Br. at 33–34. But it attempts to differentiate its practices from preventive detention because, it says, when people are granted a pretrial referral, "the potential for pretrial release" remains open. *Id.* at 34.

This purported distinction is without a constitutional difference. At bail review hearings, pretrial referrals are layered on top of bail orders. Most often, that order is to "hold without bond"—the detained person is, for example, "held without bond, with a pretrial option." *See, e.g.*, JA218 ("[T]he Defendant is committed without bail . . . OR PR TO PTR"); JA401 (same); JA520 (same); JA532 (same). This is preventive detention. The possibility that the person may later be released by the Division at its discretion does not change that they are jailed for the weeks or months all parties agree it takes the Division to process referrals, *see, e.g.*, JA174–175 (describing individual who was

released by the Pretrial Division more than three months after he was first referred), or that many of them remain detained until their criminal case is resolved because the Division refuses to release them pursuant to its self-developed criteria. All the while, the necessity findings that the County agrees are a constitutional prerequisite to preventive detention have not been made.

The myriad cases striking down unconstitutional money bail systems are illustrative. Appellate courts have repeatedly found that an order setting an unattainable money bail amount is a *de facto* detention order, because setting a condition of release that is impossible for a person to meet is identical in effect to setting no conditions of release at all. *See, e.g.*, *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) (per curiam) ("[O]nce a court finds itself in this situation—insisting on terms in a 'release' order that will cause the defendant to be detained pending trial—it must satisfy the procedural requirements for a valid detention order . . . ."); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) (per curiam) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all.").

So too here. When a person is referred to the Pretrial Division, they remain detained while the Division processes their referral and, in many cases, indefinitely. As such, persons referred to the Pretrial Division are "preventively" detained. The rigorous constitutional standards and procedures of *Salerno* and its progeny apply.

11

## C. The Remaining *Winter* Factors Favor Plaintiffs.

The County's arguments on the other *Winter* factors are similarly unsuccessful. Plaintiffs are actively suffering irreparable harm from unlawful detention that will continue absent injunctive relief, the balance of equities tips decisively in their favor, and protecting constitutional rights is always in the public interest. *See* Opening Br. at 41–46.

The County acknowledges that "deprivation of constitutional rights for even minimal periods of time constitutes irreparable injury," County Br. at 11 (quotation omitted), and that "[o]f course, being detained in the County's jail deprives the appellants of their liberty," *id.* at 17. Nevertheless, the County contends that the harm Plaintiffs are experiencing is not "irreparable" because Plaintiffs may have other available remedies. *Id.* at 29. Even if Plaintiffs did have other remedies, the County does not cite a single piece of legal authority to support this argument, and with good reason: "[T]he settled rule" is "that exhaustion of state remedies is not a prerequisite to an action under § 1983." *Pakdel v. City of San Francisco*, 141 S. Ct. 2226, 2230 (2021) (cleaned up). Indeed, the County's alternative remedies theory is simply a repackaging of their abstention arguments, which the district court already rejected and which are not properly before this Court. JA1101–1102. And the County is simply wrong to claim that Plaintiffs have adequate alternative remedies. Opening Br. at 12 (explaining that judges typically reject defense attorneys' attempts to raise these constitutional issues while Pretrial Services is "processing" a referral); *see, e.g.*, JA173; JA304. The County

offers no justification for the notion that an after-the-fact damages action could somehow remedy the harm of Plaintiffs' ongoing, unconstitutional detention. There can be no denying that every day that Plaintiffs and putative class members sit in a cold jail cell in violation of their constitutional rights inflicts additional irreparable harm.[5]

The County's arguments on the equities and the public interest are equally unpersuasive. Citing no authority, the County speculates that these factors disfavor a preliminary injunction merely because the effects would be "drastic." County Br. at 30. As Plaintiffs have already explained, Opening Br. at 44–46, the County can claim no harm from ceasing unconstitutional conduct, and an injunction to preserve constitutional rights is always in the public interest. *See Torres*, 2020 WL 7706883, at *13 ("Defendants contend that requiring an individualized hearing is tantamount to 'overhauling the criminal justice system' in Tennessee . . . . The Court is not persuaded by this 'sky is falling' argument as the issue in this case deals with constitutional concerns.") (citations omitted).

## III. The County's Procedural Arguments Are Unavailing.

This Court has jurisdiction to hear this case, and the authority to vacate and remand with instructions to enter a preliminary injunction against the County.

---

[5] The County suggests that the referral program's longevity obviates the need for relief. County Br. at 4 n.2, 41. But new class members are wrongly deprived of their liberty *daily*. The ensuing harms—including families being torn apart, medical emergencies suffered, and even deaths, Opening Br. at 43–44—do not justify turning a blind eye to ongoing and future injuries, regardless of how long the program has been in place.

## A. This Court Has Jurisdiction.

The County contends that this Court lacks jurisdiction to address Plaintiffs' appeal, raising standing, ripeness, and mootness arguments. These arguments, most of which were rejected by the district court at the motion to dismiss stage, reflect utter confusion as to basic legal principles and the nature of Plaintiffs' claims. This Court has jurisdiction.

As to standing, the County asserts that Plaintiffs "have not suffered any injury-in-fact because they do not have a legally protected interest in the County's pretrial release program." County Br. at 15. But Plaintiffs have never asserted such an interest, nor have they ever claimed that they have a right to be referred to the pretrial release program. As Plaintiffs explained above, *see supra* Section II.B.1, their claims are not based on any right created by the County's programming. Their claims arise from the "fundamental" pretrial liberty right enshrined in the Constitution. *Salerno*, 481 U.S. at 750. Moreover, the Article III requirement is one of injury in fact, not injury in law. The loss of one's bodily liberty—which Plaintiffs have unquestionably suffered—is a self-evident injury in fact. *See, e.g.*, *Karsjens v. Piper*, 845 F.3d 394, 405–06 (8th Cir. 2017) (alleged loss of liberty without due process is a "concrete injury" for standing purposes).

Similarly, the County's assertion that Plaintiffs have not been injured, for purposes of standing and ripeness, because the County does not violate state court orders, is a red herring. The harm to Plaintiffs comes not from being jailed in violation of a court order but by being jailed in violation of the state and federal constitutions.

14

*See supra* Section II.B.1. As the district court observed in rejecting this argument, "Plaintiffs' claims stem from a process that is allegedly constitutionally deficient, not from violations of any court order mandating immediate and unconditional release." JA1109. This constitutional harm is sufficiently "concrete and particularized" to establish standing. *See, e.g.*, *Holland v. Rosen*, 895 F.3d 272, 287 (3d Cir. 2018) (suit alleging pretrial detention without "access to a constitutionally compliant process" stated an injury). The fact of Plaintiffs' detention is not "contingent on future events," "abstract," or "speculative." County Br. at 18 (citations omitted). It has been very real since the moment they were arrested.[6]

The County also gestures at the causation and redressability elements of standing, suggesting that it is the state court judges, not the County, who violate Plaintiffs' constitutional rights, because the judges preside over the bail review hearings that result in people being referred to the pretrial release program. The judges are indeed one cause of Plaintiffs' injuries. But an injury may result from multiple causes; indeed, most do. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 29, cmt. b (2010) ("Multiple factual causes always exist . . . and multiple proximate causes are often present."). The

---

[6] The County asserts, astonishingly, that "although styled as a motion to dismiss, the [district court] treated the motions filed by the parties as summary judgment motions." County Br. at 15. This would be news to the district court, which said nothing to that effect. *See* JA1090–1111. The County's apparent point is that Plaintiffs should have presented more than allegations—*i.e.*, actual evidence—in support of standing. Of course, Plaintiffs did just that. JA104–536.

County literally holds the keys to the jail, and has unfettered discretion as to whether people granted pretrial referrals may leave.[7] The County causes Plaintiffs' unlawful detention, and a court order requiring them to stop would redress the harm. *See also infra* Section III.B (explaining why the County can be enjoined).

The County also asserts that some Plaintiffs cannot seek equitable relief because they are no longer detained. Whether characterized as a question of standing or mootness, this argument fails. Standing is assessed as of the time an action is commenced. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). It is uncontested that all five Plaintiffs seeking a preliminary injunction were jailed and authorized for release at the time they filed their complaint, even those who have since been released. Opening Br. at 14–20. They thus each have standing to pursue equitable relief.

Nor does the fact that some Plaintiffs were released post-filing moot the case, for at least two reasons. First, Plaintiff Christopher Butler remains detained pursuant to a pretrial referral. Opening Br. at 18–19. The County admits this fact, *see* County Br. at

---

[7] Additionally, the County acknowledges that a referred individual who is "released" from jail under the County's supervision remains—as a legal matter—in County custody. County Br. at 4–5. The admission is telling, as it shows that the state trial courts are not ordering the County to keep Plaintiffs detained. Thus, the County's subsequent claim that "any [liberty] deprivation was committed by the Court when it issued its order committing appellants to the custody of the County jail," *id.* at 17, is baseless.

8 n.3, which is fatal to mootness. A second, independent reason precludes mootness. In a class action where individual claims are "inherently transitory," standing is preserved through the "relation back" doctrine so long as the plaintiffs had standing when the complaint was filed and seek class certification. *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013); *Jonathan R. by Dixon v. Just.*, 41 F.4th 316, 325 (4th Cir.). Claims brought by pretrial detainees challenging the legality of their detention are the axiomatic "inherently transitory" claims. Pretrial detention "is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (holding that putative class action brought by plaintiffs who had since been released from pretrial detention was not moot); *see also Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (same); *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975) (same). As the district court already held, "Plaintiffs can fairly invoke the 'inherently transitory' exception" to mootness. JA1110; *see also id.* ("Pretrial detention is a classic example of an inherently transitory claim."). The County does not engage with this argument.[8] Plaintiffs' motion for preliminary relief is not moot.

---

[8] The County's only response is that the district court dismissed the Plaintiffs who were released after the complaint was filed, a decision Plaintiffs did not appeal. County Br. at 8, 14. Putting aside that such an order is not immediately appealable, *see* Fed. R. Civ. P. 54(b), Plaintiffs have repeatedly noted in the district court proceedings that the dismissal of the now-released Plaintiffs was legally incorrect given their status as representatives of a putative and transitory class. JA1027, JA802.

**B. The County Can Be Enjoined.**

The County quibbles with Plaintiffs' proposed preliminary relief, complaining that it is "directed at the improper party" because "the relief they seek is really from the judiciary, not the County." County Br. at 30. This finger-pointing falls flat. Plaintiffs do not seek injunctive relief against the judges, nor do they seek relief compelling the County to "hold the same hearings as a bail review hearing might be held in the courts." *Id.* at 21. Plaintiffs' proposed preliminary relief would simply prohibit the County from detaining people unless a record existed showing that their detention was constitutional, *i.e.*, that the substantive findings and procedural safeguards required by the Constitution were provided. JA149–152. This relief is common and uncontroversial. *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (collecting cases).

The County occupies two roles relevant to this lawsuit and can be enjoined in either one. First, the County plays a significant, active, discretionary role in Plaintiffs' injuries by creating the Pretrial Division in the first instance, *see* County Br. at 26 (admitting of the Pretrial Division that "no law compels its existence," and threatening to use its discretion to abolish it), and by devising policies and procedures by which the Division will assess people referred to it by the courts. JA547–548. Under those policies and procedures, Plaintiffs referred to the Division wait in jail for weeks as the Division decides behind closed doors whether or not they will be released, ultimately leaving many in jail until trial. Opening Br. at 7–10. For this reason, the County's practices violate the Constitution, making relief appropriate.

The County can also be enjoined for a second reason. Under equitable principles first set out over a century ago in *Ex parte Young*, 209 U.S. 123, 157 (1908), federal courts have the power to enjoin local officials from violating the Constitution. Here, in its role as the custodian of the Prince George's County Jail, the County Department of Corrections jails people who have received pretrial referrals pursuant to unlawful detention orders. In this second capacity, the County may be enjoined "from enforcing state [detention orders] that are contrary to federal law." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). Thus, even if the Pretrial Division was not itself violating the Constitution, an injunction to stop it from *enforcing* unconstitutional orders would remain appropriate. Indeed, federal courts have consistently enjoined jail custodians from detaining persons who have not received due process from a court. *See, e.g.*, *Torres*, 2020 WL 7706883, at *14; *McNeil v. Cmty. Prob. Servs., LLC*, No. 18-CV-00033, 2019 WL 633012, at *17 (M.D. Tenn. Feb. 14, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 765 (M.D. Tenn. 2015); *cf. Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 992–93 (D. Ariz. 2011).

The County claims it cannot be enjoined because it "simply follow[s] the Court's orders." County Br. at 28. This argument is wrong on the facts and the law. First, as a factual matter, the County does not "simply follow" court orders—it alone decides who among the people referred to it will be released (and if so, when) and who will continue

to sit in a jail cell.[9] The County concedes that, when a judge refers a person to it, the Division is empowered to release the person from the jail without further judicial involvement. County Br. at 5. So although the County protests it cannot "disobey" a state court order, *id.* at 33, nothing in state law or the state courts' orders obligates the County to do any of the unconstitutional things that Plaintiffs challenge.

Even if the Pretrial Division's pretrial release criteria and procedures were compelled by state law or state court order, a lack of discretion is not a legal defense. *Ex parte Young* contemplates this very situation. The Division unquestionably fits the definition of an enforcement actor that can be enjoined under *Ex parte Young*. As one court put it, a local official "does not enjoy immunity merely because he was following orders. Indeed, [] *Ex parte Young* assumes that the [official] has done nothing more than enforce the law as promulgated by the State." *Edwards v. Cofield*, 265 F. Supp. 3d 1344, 1346 (M.D. Ala. 2017); *see also Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022);

---

[9] The County's argument misreads two out-of-circuit cases. In each case, sheriffs were sued for doing nothing more than operating a jail where pretrial detainees were housed based on challenged bail orders issued by courts. In *ODonnell v. Harris County*, after the court initially held that the sheriff was not a municipal policymaker and dismissed him from the case, the panel reheard the case and reinstated the plaintiffs' claims against the sheriff as an enforcement actor. 892 F.3d 147, 165 (5th Cir. 2018). In other words, the court affirmed enjoining the sheriff from enforcing unconstitutional detention orders *even if state law gave him no discretion to refuse those orders.* And in *Daves v. Dallas County*, the en banc court did not even reach the issue of the sheriff-as-jailer, 22 F.4th 522, 540–41 (5th Cir. 2022), and specifically declined to disturb the prior panel decision holding that the plaintiffs had standing against the sheriff, 984 F.3d 381, 405–07 (5th Cir. 2020). These factually distinct non-binding cases do not support the County's arguments.

*Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959, 2016 WL 6025486, at *8–9 (N.D. Cal. Oct. 14, 2016). As Judge Jeffrey Sutton of the Sixth Circuit recently explained in affirming a preliminary injunction that prohibited a county sheriff from enforcing unconstitutional bail orders issued by non-defendant judges, "[t]here are plenty of cases allowing injunction actions like this one." *McNeil*, 945 F.3d at 996 (collecting cases).[10]

Judge Sutton's opinion in *McNeil* is instructive. There, the plaintiffs were a putative class of probationers in Tennessee, who were jailed pursuant to money bail amounts they could not afford. *Id.* at 993. The district court held that this wealth-based detention scheme violated the Fourteenth Amendment and preliminarily enjoined the county sheriff—the custodian of the county jail under state law—from detaining any person for the sole reason that the person had not been able to pay bail. *Id.* On appeal, the sheriff argued, *inter alia*, that the plaintiffs should have sued the bail-setting judges, not him, because "[t]he true problem . . . is the way the judges set bail amounts," not "his detention of the probationers." *Id.* at 995. In other words, the same argument the County makes here.

The Sixth Circuit disagreed, holding that the sheriff could properly be enjoined from detaining persons who had not received constitutionally due process because, "[i]n

---

[10] The County states that it "cannot provide the relief sought even if an injunction were granted" because of supposedly conflicting state court orders. County Br. at 33. But surely the County does not imply that it would defy a federal court order directing it to follow the federal Constitution. "[T]he availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause . . . ." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

accordance with *Ex parte Young*, sovereign immunity does not stand in the way of a lawsuit against a public official actively involved with administering the alleged [constitutional] violation." *Id.* (citations and internal quotation marks omitted). Writing for the panel, Judge Sutton explained:

> Consider the alleged violation to be two actions. Action one: A judge determines a bail amount without considering ability to pay or adequacy of alternatives. Action two: Sheriff Helton detains the probationer until she pays the bail amount. The alleged constitutional violation is detention on an improperly determined bail amount. The plaintiffs might have employed a different theory and sued the judges, if not immune themselves, for their part in carrying out the alleged harm. But 'the plaintiff is the master of the complaint' and free to choose between legal theories. Absent some other bar, they are free to sue the sheriff.

*Id.* at 995–96 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 388–89 (1987)); *see also id.* at 997 ("[W]e cannot fault the plaintiffs for taking the well-trodden path marked by *Ex parte Young* instead of charting a new-to-our-circuit course through the comparative jungle of judicial immunity.").

So too here. Plaintiffs can sue—and have sued—the judges for their role in Prince George's County's unconstitutional bail system. But the judges are not the only parties who can redress these ongoing constitutional violations; Plaintiffs can obtain relief against the County for both its discretionary and unconstitutional pretrial referral practices *and* for its role as an enforcement actor unlawfully detaining Plaintiffs and putative class members. This Court can enjoin the County, and in particular its Department of Corrections, from continuing to violate the Constitution.

## C. The Court Can Instruct the District Court to Enter an Injunction.

Finally, the County questions this Court's authority to enter Plaintiffs' requested preliminary injunction.[11] But where the material facts are beyond dispute, the legal questions remaining are reviewed *de novo*, and it is well within this Court's discretion to address the merits of Plaintiffs' motion. Opening Br. at 27–29; *League of Women Voters of N.C. v. North Carolina,* 769 F.3d 224, 246 (4th Cir. 2014) (ordering the district court to enter a preliminary injunction because, *inter alia,* "Plaintiffs presented undisputed evidence" of alleged facts). Indeed, the case that the County cites in support of this argument—*GG ex rel. Grimm v. Gloucester County School Board*, 822 F.3d 709 (4th Cir. 2016)—confirms this Court's authority to do so. This Court in *Grimm* vacated the district court's denial of a preliminary injunction and remanded with instructions to apply the proper evidentiary standard, with the concurrence noting that "*this Court would be on sound ground in granting the requested preliminary injunction on the undisputed facts in the record.*" *Id.* at 727 (emphasis in original) (Davis, J., concurring). That the court elected not to enter the preliminary injunction does not undermine its well-established authority to do so. As Judge Davis observed, "When the record before us supports the entry of a preliminary injunction . . . we have not hesitated to act to prevent irreparable injury to a litigant before us." *Id.* at 729 (citing *League of Women*

---

[11] Technically, Plaintiffs do not ask this Court to enter the injunction itself, but rather to "remand[] with instructions for the district court to enter an injunction." Opening Br. at 3.

*Voters*, 769 F.3d at 248; *Eisenberg ex rel. Eisenberg v. Montgomery Cty. Pub. Schs.*, 197 F.3d 123, 134 (4th Cir. 1999)). That undisputed record firmly supporting a preliminary injunction is currently before this Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court, at minimum, reverse, vacate, and remand with instructions for the district court to properly consider the motion and issue findings of fact and conclusions of law. Moreover, given the undisputed record, and in order to avoid further irreparable harm to Plaintiffs and hundreds of putative class members, this Court should decide the legal issues and remand with instructions to enter the requested preliminary injunction.

Respectfully submitted this 13th day of June, 2023.


/s/ Ellora Thadaney Israni
Ellora Thadaney Israni*                    Matthew Martens*
Jeremy D. Cutting                          Edward Williams*
Ryan C. Downer                             Donna Farag
CIVIL RIGHTS CORPS                         Thomas Bredar*
1601 Connecticut Ave. NW, Suite 800        Ayana Williams
Washington, D.C. 20009                     Sonika Data
                                           WILMER CUTLER PICKERING
Seth Wayne*                                   HALE AND DORR LLP
Elizabeth R. Cruikshank                    2100 Pennsylvania Ave. NW
Mary B. McCord*                            Washington, D.C. 20037
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
GEORGETOWN LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001


*Counsel for Plaintiffs*

* admitted to the Bar of this Court

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a). This brief contains 6,499 words, excluding the parts of the document exempted by Rule 32(f), and was prepared in fourteen-point Garamond font, a proportionally spaced typeface, using Microsoft Word.

*/s/ Ellora Thadaney Israni*
Ellora Thadaney Israni
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Ellora Thadaney Israni
Ellora Thadaney Israni
Counsel for Plaintiffs